Loring, J.,
delivered the opinion of the court:
The petitioner claims damages for the breach of a contract, and the court find the facts to be — -
That on the 24th day of December, 1864, a contract was made between G-. 13. Hibbard, assistant quartermaster, in behalf of the United States, of the first part, and the claimant, of the second part, as follows:
“First. That the said H. D. McKinney shall deliver at a point on the bant of the Cumberland Kiver, within twenty-five miles of Nashville, Tennessee, on or before the first day of May, 1865, ten thousand cords of good merchantable hard wood, (10,000,) said wood tobe subject to inspection by a United States government inspector, to be inspected and received by the government whenever five hundred cords shall be delivered as above stated, or as soon thereafter as possible. The delivery to commence on or before the first day of March, 1865, and at least -to be delivered before the-day of-, 1865, and all before the first day of May, 1865.”
Under this contract the claimant cut and delivered and was paid for 3,700 cords of wood, and in March and April, 1865, the overflow of the waters of the Cumberland Kiver making it dangerous to jále wood on its banks, he was ordered by the Quartermaster Department to deliver no more wood on the contract till the waters had subsided. The petitioner proceeded in preparing for the fulfilment of his contract, and was ready to deliver the balance of the wood before the first of May, 1865.
*541 That on or about tbe 20tb of May, 1865, tbe waters of tbe river baying subsided, be was ordered by tbe Quartermaster Department to resume tbe deliveries of tbe wood under tbe contract, and in obedience thereto be delivered 4,844iA cords on tbe banks of tbe river.
On or about tbe 20tb of June, 1865, tbe claimant was directed by General Donaldson, Chief Quartermaster of tbe Department of tbe Cumberland, to deliver no more wood, because the operations of tbe government there and its need for woodkad ceased, and tbe 4,844ii cords of wood delivered on tbebanks of tbe river, and tbe balance of tbe wood for tbe fulfilment of tbe contract then cut, was not used or paid for by tbe government, but was left on tbe bands of tbe claimant.
The.claimant afterward presented bis claim to tbe Quartermaster General, who allowed him thereupon, as tbe estimated amount of tbe expenses incurred, tbe sum of $23,964 47, less tbe supposed value of tbe 4,844}1 cords of wood delivered as aforesaid, amounting, at one dollar per cord, to $4,844 69, and tbe balance of $19,119 78 was paid by tbe United States to tbe . claimant and received by him under protest against its inadequacy and injustice.
Tbe claimant then sold tbe 4,844ii cords of wood above mentioned for tbe sum of $1,211, which was at tbe market price at that time of wood so placed, and that obtained on sales made by tbe government on advertisement. Tbe withdrawal of tbe army from that vicinity, and large quantities of wood thrown upon tbe market by tbe government, bad reduced tbe price of wood on tbe banks of tbe river to tbe cost of getting it to market.
Tbe balance of tbe wood required for tbe fulfilment of the contract, viz: 1,485^, was cut, but not hauled to tbe river bank, and tbe expenses of hauling, ranking, &c., of tbe same would have been $1 90.
At tbe time tbe contract was made, General Thomas’ army was in and around Nashville. Tbe need of wood was great and tbe supply small, and to relieve tbe suffering that existed they were obliged to use fencing and cut down fruit and ornamental trees for fuel. There were also several thousand patients in tbe military hospitals, and wood sold in tbe Nashville market to citizens at from fifteen to twenty dollars per cord, and tbe average monthly issue in tbe winter months, from tbe quarter *542 master’s issue, was about twenty-five thousand cords*, the evidence showed that wood was procured on other contracts than that of the .claimant, and at the same price.
The contract was made under the authority of General Donaldson, Chief Quartermaster of the Department of the Cumberland, and was recognized and approved by him.
The petitioner claims damages for the breach of a contract, and it was objected by the Attorney General that the contract was invalid because it was made without advertisement for proposals. The evidence shows that an exigency for wood existed when the contract was made, but, as contended for the defendants, the contract shows that it was not made to meet that exigency, for it was made on the first of December, 1864, for the delivery of wood from the first of March to the first of May, 1865. It was made for a future supply and on the authority of the chief quartermaster of General Thomas’ army, and is thus within the prohibition of the act of March 2,1861, and if an exigency for the wood had been shown the case would have been within the act of June 2,1862, by which, in case of an exigency, that is to be found, and. the purchase ordered by the commanding general.